## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RICHARD TREVINO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 06-CV-0257-CVE-FHM** |
| | ) | |
| **JUSTIN JONES, JESSE T. SUTTER, JOE** | ) | |
| **NOWLIN, SHARON HARRISON,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is the Emergency Motion for Temporary Restraining Order and/or

Preliminary Injunction (Dkt. ## 17, 27)[1] filed by plaintiff Richard Trevino ("Trevino"), appearing

pro se, and the Motion to Dismiss/Motion for Summary Judgment and Brief in Support (Dkt. # 24)

filed by defendants Justin Jones, Jesse T. Sutter, Joe Nowlin, and Sharon Harrison.  Plaintiff is

currently a prisoner incarcerated at the Northeastern Oklahoma Correctional Center in Vinita,

Oklahoma. On May 15, 2006, plaintiff filed a complaint (Dkt. # 1) under 42 U.S.C. § 1983 alleging

that defendants (1) violated his Eighth Amendment right to be free from cruel and unusual

punishment, (2) violated his due process rights, and (3) failed to afford him equal protection under

the law by confining him to an outside "pen" after he had been fired from his previous prison job.

Defendants submitted a Special Report (Dkt. # 23) as directed by the Court.  Defendants now move

to dismiss the complaint, or in the alternative, for summary judgment, on the grounds that (1)

---

[1]     Plaintiff filed the motion for temporary restraining order and/or permanent injunction on July
20, 2006.  Dkt. # 17.  He filed a virtually identical motion on November 3, 2006.  Dkt. # 27.
Given that the two filing do not differ in any material way, the Court treats them as one
motion.

plaintiff's Eighth Amendment claim is groundless; (2) plaintiff has failed to state any type of due process claim; (3) plaintiff has not met his burden of demonstrating an equal protection violation; (4) plaintiff's claims of alleged constitutional violations against defendants must fail due to lack of personal participation; (5) defendants are entitled to qualified immunity from suit; (6) defendants are immune from suit for damages in their official capacities under the Eleventh Amendment; and (7) plaintiff has failed to show that he is entitled to the declaratory or injunctive relief he seeks. Plaintiff has filed a response to defendants' motion. Dkt. # 25. For the reasons set forth below, the Court dismisses without prejudice plaintiff's equal protection claim for failure to exhaust administrative remedies. The Court further finds that defendants are entitled to summary judgment on plaintiff's Eighth Amendment and due process claims.

## I.

On July 29, 2005, plaintiff was incarcerated by the Oklahoma Department of Corrections. He was transferred to the Northeastern Oklahoma Correctional Center ("NOCC") on August 24, 2005 and remains there to date.

On February 3, 2006, while plaintiff was working as a member of the yard crew, he allegedly disobeyed a direct order from Sargent Fellers to remain with the rest of the yard crew. Dkt. # 23-2, at 7. Sargent Fellers filed a report describing the incident the same day. Id. at 6. The offense report was accepted on February 7, 2006 and referred for investigation on that day. Id. On February 10, 2006, plaintiff received a copy of the written charge against him and requested a hearing. Id. On February 10, 2006, investigating officer Gene Jones ("Jones") filled out a report. Two inmate witnesses signed statements setting forth their "testimony." Id. at 9, 10. Jones concluded that plaintiff did, in fact, disobey orders. On February 12, 2006, plaintiff received copies of the

investigator's report, the misconduct report, the incident report, both witnesses' discretionary action forms, a review of evidence form, and a record of delivery of the copies of evidence form. Id. at 12. A disciplinary hearing was held on February 14, 2006, and plaintiff was found "guilty." Id. at 14. Plaintiff received a copy of the disposition on February 17, 2006. Id. On March 1, 2006, plaintiff appealed the decision. Id. at 16. On March 30, 2006, the "due process reviewer" found that plaintiff had received due process. Id. at 18. Defendant Sutter affirmed the due process review on March 31, 2006. Id. Plaintiff received the due process review form on April 6, 2006. Id.

After the February 3, 2006 incident but prior to the final disposition of the grievance procedure and prior to any hearing, plaintiff was reassigned to the building 8 recreation yard. This reassignment was consistent with the inter-office memorandum dated July 14, 2005, which read:

> Effective 7-18-05 all inmates, who get fired from their job or refuses [sic] to work, will be assigned to the 8-bldg. recreation yard during the hours of 0800 to 1600. Bathroom privileges will be offered on the unit tours of the 8 building officers. A water cooler and sack lunch will be provided. Inmates on 8-building recreation yard will be outcounted during the institutional count. Whenever you get another job or are willing to work, you may be allowed to return to regularly assigned workduty. Inmates will not be allowed to take any property such as, caps, personal property, writing material, radios, games, books, etc.

Dkt. # 23-2, at 28. Plaintiff was confined to what he describes as an outdoor "pen" in the recreation yard for approximately eight hours per day from Monday, February 6, 2006 through Friday, February 10, 2006. During this time, plaintiff contends that he was exposed to sub-freezing temperatures and harsh winds. Further, he claims that the prison officers only permitted bathroom breaks two times during each eight-hour period. The prison officers claim that the inmates in the recreation yard were "monitored a minimum of once per hour and bathroom breaks were given as needed." Dkt. # 23-3, at 19, 20, 21, 22, 23, 24, 25, 26.

3

On February 10, 2006, the NOCC case manager coordinator sent out a memorandum indicating the job changes effective Monday, February 13, 2006. Id. at 11. The list indicated that plaintiff was transferred from the recreation yard to "Agri-Services." Plaintiff does not dispute that he was assigned to the recreation yard only during the week of Monday, February 6, 2006.

On February 12, 2006, plaintiff filed a grievance addressed to defendant Nowlin. Dkt. # 23-2, at 22. He stated, "you have enforced sanctions before you have held a hearing and prior notice failing to give me proper due process." Id. at 23. He further wrote, "I am pretty sure that *(18 [sic] degrees at 8am yesterday) would qualify for cruel and unusual punishment. I was denied access to a bathroom for extended periods of time, this was sometime [sic] an embarrassing and painful experience." Id. On February 24, 2006, defendant Nowlin responded: "You are provided shelter from the rain. You are provided food, water, restroom breaks, coats. I checked with property and you have been issued coveralls to wear in the cold weather. Show me proof of the 18 [degree] temp. at 8:00am on 2-11-06. . . The Restroom breaks are at a minimum, once an hour." Id. at 22.

On February 27, 2006, plaintiff filed another grievance report form, which again expressed his concerns that he had been subject to cruel and unusual punishment. Id. at 25. On March 7, 2006, defendant Sutter filed a grievance response, stating:

> Mr. Trevino, Assigning an inmate to the recreation yard during work hours is not corporal punishment. Inmates assigned to the recreation yard are provided with shelter, water, sack lunches, coveralls and bathroom breaks are given every 30 minutes. Inmates who are assigned to the recreation yard are monitored at least every 30 minutes when officers are touring the units. . . . Inmates who are not assigned a job because they were fired or refuse to work are not going to be allowed to sleep on their bunks all day while other inmates are required to work.

Id. at 31. Plaintiff received Sutter's response on March 13, 2006 and decided to appeal the response on March 21, 2006. Id. at 32. He included a written discussion restating that the conditions in the

recreation yard constituted cruel and unusual punishment.  He also objected to defendant Sutter's statement that bathroom breaks were given every 30 minutes.  He stated, "Guards have reported that at count time ONLY were bathroom breaks given.  That's twice a day."  Id. at 33.   On March 27, 2006, Debbie Morton affirmed defendant Sutter's response.  She also noted that plaintiff satisfied the exhaustion of administrative remedies required by OKLA. STAT. tit. 57, § 564, but noted that the grievance procedure does not satisfy the additional requirements for exhaustion of administrative remedies required by the Governmental Tort Claims Act, OKLA. STAT. tit. 51, § 151.  Id. at 38.

## II.

Defendants have styled their motion as a motion to dismiss/motion for summary judgment.  Defendants move to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In the alternative, defendants move for summary judgment pursuant to Fed. R. Civ. P. 56(b) on all of plaintiff's claims.  Both defendants and plaintiff have submitted matters outside the pleading.  Fed. R. Civ. P. 12(b) gives the Court two options if a Rule 12(b)(6) motion presents matters outside the pleading.  First, the Court may exclude any matters outside the pleadings, and may treat the motion as one to dismiss.  Second, the Court may consider the additional material, and convert the motion into one for summary judgment.  If the Court chooses the second option, the parties must be given a reasonable opportunity to present all pertinent material.  See  Paper, Allied Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005)

Here, given that the Court considers these materials in ruling upon defendants' motion, the Court treats defendants' motion as a motion for summary judgment and not a motion to dismiss.  See Fed. R. Civ. P. 12(b).  The Court finds that both parties have been given fair notice to submit all relevant evidence.  Plaintiff has not objected to defendants' attachment of additional exhibits or

objected that he has not had a reasonable opportunity to present all material pertinent to the motion. On the contrary, plaintiff supplemented his response with matters outside of the pleading and referenced the material provided by defendants. Further, as noted above, defendants styled the motion as a "motion to dismiss/motion for summary judgment." Thus, plaintiff was on notice that defendants sought a resolution of the action on the merits.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

## III.

In his complaint, pursuant to 18 U.S.C. § 1983, plaintiff alleges that defendants violated his right to be free from cruel and unusual punishment in violation of his Eighth Amendment rights, violated his due process rights, and did not afford him equal protection of the laws.  Prior to addressing the merits of his complaint, the Court addresses sua sponte in Section III(A) whether plaintiff has exhausted his administrative remedies.  The Court addresses plaintiff's Eighth Amendment claim in Section III(B) and his due process claim in Section III(C).

## A.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure.  Woodford v. Ngo, 126 S. Ct. 2378 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it.  See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  However, PLRA exhaustion is not jurisdictional.  A district court may "dismiss plainly meritless claims

without first addressing what may be a much more complex question, namely, whether the prisoner

did in fact exhaust available administrative remedies." Woodford v. Ngo, 126 S. Ct. 2378, 2379

(2006).

In Jones v. Bock, 127 S. Ct. 910, 921 (2007), the Supreme Court held that "inmates are not

required to specially plead or demonstrate exhaustion in their complaints." Previously, the Tenth

Circuit required inmates to sufficiently plead exhaustion of grievance proceedings, including a

specific description of the administrative proceedings and outcome and/or supporting

documentation. Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), abrogated

by Jones, 127 S. Ct. at 921. Here, although he was not required to do so, plaintiff specifically stated

that he had exhausted his administrative remedies in his complaint. Dkt. # 1, at 7. The fact that he

did not attach the initial grievance documentation to the complaint or include a detailed description

of the proceeding is not fatal to his claims.

The Supreme Court also held in Jones that nothing in the PLRA requires plaintiffs to name

all defendants in their initial grievances. 127 S. Ct. at 922. Thus, the fact that plaintiff did not

specifically mention each of the defendants in his initial grievance concerning his detention in the

recreation yard is not per se inadequate. Although he directed the grievance at defendant Nowlin,

construing his grievance liberally, the Court finds that he contemplated that the alleged

constitutional violations constituted a system-wide problem due to the procedures condoned by

prison supervisors. See Dkt. # 23-2, at 25.

"[T]he failure to exhaust is an affirmative defense under the PLRA." Jones, 127 S. Ct. at

921. Defendants have not raised the affirmative defense of exhaustion of administrative remedies

in their motion. However, "[f]ailure to raise an affirmative defense by motion will not result in a

waiver as long as it is interposed in the answer." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1277 (3d. 2004). Since defendants have not yet filed answers, the Court cannot conclude that they have waived the affirmative defense of exhaustion.

The Court finds that plaintiff exhausted his administrative remedies with respect to his Eighth Amendment and due process claims. In his grievance form dated February 12, 2006, plaintiff specifically objected to the conditions of his confinement – both respect to his exposure to cold and to the restricted bathroom access. See Dkt. # 23-2, at 23. He stated that the conditions "would qualify for cruel and unusual punishment." Id. Further, he argued, "you have enforced sanctions before you have held a hearing and prior notice failing to give me proper due process." Id. Because plaintiff specifically raised Eighth Amendment and due process concerns in his grievance, and because he properly completed the NOCC grievance procedure, the Court finds that he exhausted the administrative procedures with respect to those claims.

Whether plaintiff exhausted his administrative remedies with respect to his equal protection claim is less clear. In his grievance, plaintiff does not specifically mention the Fourteenth Amendment or use the phrase "equal protection." Even construing his grievance liberally, the Court does not find any language relating to equal protection or differential treatment. The Court therefore finds that plaintiff has not exhausted his administrative remedies with respect to that claim. In Jones, the Supreme Court held that, "if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad." Jones, 127 S. Ct. at 924. The fact that plaintiff did not exhaust his administrative remedies with respect to his equal protection claim, therefore, does not

affect his Eighth Amendment and due process claims.  The Court dismisses without prejudice only plaintiff's equal protection claim.[2]

## B.

Plaintiff claims that the conditions of his confinement – specifically, being confined to the recreation yard in cold temperature and with limited bathroom access –  violated his Eighth Amendment right to be free from cruel and unusual punishment.  Conditions of confinement fall within the Eighth Amendment because they are part of the penalty that criminal offenders, such as plaintiff, pay for their offenses.  See Whitley v. Albers, 475 U.S. 312, 318-19 (1986); Penrod, 94 F.3d at 1405.  While prison officials have broad administrative and discretionary authority to manage prisons, Penrod, 94 F.3d at 1405, they must provide humane conditions based on "contemporary standards of decency."  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Prison officials are required to provide humane conditions of confinement by ensuring inmates receive the basic

---

[2]     Even if plaintiff exhausted his administrative remedies with respect to his equal protection claim, defendants would be entitled to summary judgment on that claim.  Though his claim is unclear, plaintiff appears to allege that defendants created an illegal suspect class of inmates who were subjected to cruel and unusual punishment.  He claims that he was part of the class of inmates who lost their jobs, and only those inmates were placed in the recreation yard.  See Dkt. # 25, at 4.  Plaintiff makes no allegation indicating that he is a member of a constitutionally protected class or that he has been denied a fundamental right; therefore, defendants' alleged action in placing plaintiff in the recreation yard must only bear a rational relation to a legitimate state purpose.  Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996); Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, 927 F.3d 1111, 1119 (10th Cir. 1991).  Here, plaintiff's placement in the recreation yard was rationally related to the legitimate purpose of managing prison inmates.  The prison officials did not want to create an incentive whereby inmates who were fired from their jobs or refused to work would be "rewarded" by being permitted to remain in their cells while the other inmates worked.  In this way, the recreation yard was created to control inmates, not to punish them.  See Penrod, 94 F.3d at 1406.  Since there was a rational reason for the differential treatment of inmates who were fired from their jobs or refused to work or had disciplinary problems at their previous jobs, no equal protection violation occurred here.

necessities of adequate food, clothing, shelter, and medical care.  See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994); Barney v. Pulsipher, 143 F.3d 12999, 1310 (10th Cir. 1998).  However, "only those deprivations denying the minimal civilized measure of life's necessities . . . are sufficiently grave to form the basis of an Eighth Amendment violation."  Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted).

In order to hold prison officials liable for violating plaintiff's right to humane conditions of confinement under the Eighth Amendment, two requirements must be met.  First, the deprivation alleged must be "sufficiently serious."  Id.  "[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  Second, the officials must have a "sufficiently culpable state of mind," meaning that the officials must exhibit "deliberate indifference" to a substantial risk of serious harm to plaintiff.  Id.  The Court addresses these two requirements below.

1.      "Sufficiently Serious" Conditions

The first requirement that the conditions complained of must be "sufficiently serious" to implicate constitutional rights is an objective inquiry.  To satisfy this prong, plaintiff must show that conditions were "more than uncomfortable," DeSpain v. Uphoff, 264 F.3d 965, 973 (10th Cir. 2001), and rose to the level of "conditions posing a substantial risk of serious harm" to plaintiff.  Farmer, 511 U.S. at 834.  The Eighth Amendment "does not mandate comfortable prisons"; the conditions imposed may be "restrictive and even harsh."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  The Court's analysis should not be based on "[its] idea of how best to operate a detention facility."  Id. at 351.  It should reflect a "balance between judicial respect for the exigencies of running a prison and the 'broad and idealistic concepts of dignity, civilized standards, humanity and decency'

embodied in the Eighth Amendment." DeSpain, 264 F.3d at 973 (quoting Estelle, 429 U.S. at 102) (internal citations omitted).

In Wilson, the Supreme Court noted that conditions of confinement should be examined as a whole because deprivations "in combination" may constitute a constitutional violation. 501 U.S. at 304. It noted that, for example, "a low cell temperature at night combined with a failure to issue blankets" could have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need, such as . . . warmth." Id. Here, plaintiff was not subject to low temperatures without any protection. The prison records show that plaintiff was issued coveralls on October 4, 2005. Dkt. # 23-3, at 28. Thus, examining the conditions "as a whole," the Court finds that plaintiff's exposure to cold temperature did not constitute cruel and unusual punishment under the Eighth Amendment.

In examining the conditions of confinement, the "'circumstances, nature and duration' of the challenged conditions must be carefully considered." DeSpain, 264 F. 3d at 974 (quoting Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)); see also Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (inquiry into whether alleged deprivations are sufficiently serious turns not only on the severity of the alleged deprivations, but also on their duration). According to both plaintiff's and defendants' accounts, prisoners assigned to the recreation yard remained outside during the day for approximately eight hours. Further, plaintiff was assigned to the recreation yard for only five consecutive days. During those days, other inmates who were not assigned to the recreation yard were also outside. The farm, maintenance, yard, and public work crews worked outside between February 6 and February 10, 2006. Given the undisputed short duration of plaintiff's exposure to cold and the related circumstances, the Court finds that, as a matter of law, plaintiff was not subject

12

to cruel and unusual punishment.   Cf. Gaston v. Coughlin, 249 F.3d 156, 165 (2d Cir. 2001) (holding that plaintiff's complaint of having to endure freezing and sub-zero temperature in his cell throughout the winter constituted a colorable Eighth Amendment claim); Spencer v. Bouchard, 449 F.3d 721, 728 (6th Cir. 2006) (holding that, where plaintiff was subjected to "cold temperatures *continuously for several months* (including all of December and January)" inside his cell and was subject to rain and snow leaks inside his cell, plaintiff had presented sufficient evidence to create a genuine issue of material fact with respect to the objective component of his Eighth Amendment claim) (emphasis in original).

Plaintiff's statement that, as a result of his exposure to the cold, he suffered numbness in his left hand and fingers does not create a genuine issue of material fact.  Plaintiff did not consult a doctor regarding this condition until June 2006.  Dkt. # 23-3, at 35.  Brett Hubbard, M.D., the physician who treated plaintiff, found that plaintiff's complaints were not consistent with his medical findings.  Id. at 36.  There is no evidence that this medical condition is at all related to plaintiff's exposure to cold in February 2006.

Plaintiff also contends that he was subject to cruel and unusual punishment because his bathroom access was restricted.  There is a dispute about the number of times that plaintiff and other inmates assigned to the recreation yard were permitted to use the bathroom facilities.  Defendant Nolan, in responding to plaintiff's grievance, stated that "restroom breaks are at a minimum, once an hour."  Dkt. # 23-2, at 22.  Defendant Sutter, in reviewing plaintiff's grievance, stated that "bathroom breaks are given every 30 minutes."  Dkt. # 23-2, at 31.  In his appeal of his grievance, plaintiff stated, "Guards have reported that at count time ONLY were bathroom breaks given. That's twice a day."  Dkt. # 23-2, at 33.  Viewing the facts in the light most favorable to plaintiff,

the Court will assume, for summary judgment purposes, that plaintiff and other inmates in the recreation yard were given bathroom breaks only twice a day during their eight-hour outside shift. Even based on this view of the facts, the Court finds that, as an objective matter, such restricted bathroom access did not rise to the level of a constitutional violation.  Plaintiff contends that the restricted bathroom access "was sometime [sic] an embarrassing and painful experience."  Dkt. # 23-2, at 23.  As noted above, while waiting to go to the bathroom for several hours is certainly uncomfortable, it does not constitute a "deprivation[] denying the minimal civilized measure of life's necessities."  Wilson, 501 U.S. at 298.  The Court finds that, as a matter of law, plaintiff's opportunity to go to the bathroom two times during an eight-hour period does not constitute cruel and unusual punishment.  See DeSpain, 264 F.3d at 974 ("there is 'no doubt that toilets can be unavailable for some period of time without violating the Eighth Amendment'") (quoting Johnson, 217 F.3d at 733)).

Finally, the Court addresses plaintiff's argument that he was exposed to human waste in violation of his Eighth Amendment rights.  "[E]xposure to human waste carries particular weight in the conditions calculus." DeSpain, 264 F.3d at 974; McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) (finding "sufficiently serious" conditions where inmate was detained in feces-covered cell for three days); Fruit v. Norris, 905 F.2d 1147, 1151 (8th Cir. 1990) ("courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste"); Michaud v. Sheriff of Essex County, 390 Mass. 523 (1983) (compiling cases showing "an intolerance for confinement which requires persons to live in close proximity to their own human waste and that of others.").  "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in Farmer and the more general standards of dignity

14

embodied in the Eighth Amendment." <u>DeSpain</u>, 264 F.3d at 974.  Despite the Tenth Circuit and this Court's concerns regarding exposure to human waste, upon examining the circumstances of this case, the Court finds that plaintiff's Eighth Amendment rights were not violated.  As noted above, plaintiff and the other inmates were afforded the opportunity to use restroom facilities two times during their eight-hour period in the recreation yard.  Thus, even according to plaintiff's version of the facts, the amount of human waste to which he was exposed could not have been significant.  This case is far afield from the types of cases where exposure to human waste constitutes an Eighth Amendment violation.  <u>See, e.g., DeSpain</u>, 264 F.3d at 975 (plaintiff met the objective prong of <u>Farmer</u> test where plaintiff was exposed for thirty-six hours to stench of sitting urine in his toilet and urine and feces in water near his cell and where officers rolled food cart through the urine-mixed water); <u>Johnson v. Pelker</u>, 891 F.2d 126, 139 (7th Cir. 1989) (three days in cell with feces smeared on walls was not within "civilized standards, humanity, and decency").

In sum, the Court finds that, viewing the facts in the light most favorable to plaintiff, plaintiff has failed to establish a genuine issue of material fact that the prison conditions suffered by plaintiff when he was assigned to the recreation yard were "sufficiently serious" to constitute Eighth Amendment violations.

**2.      Official Knowledge of Conditions**

In addition to failing to meet the "substantially serious" requirement, plaintiff's Eighth Amendment claim fails because there is no genuine issue of material fact as to the second  prong of the <u>Farmer</u> test.  The second, subjective prong requires that prison officials show "deliberate indifference" to the existence of any risk inherent in exposure to the challenged conditions.  The Supreme Court explained,

15

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

Farmer, 511 U.S. at 837.   A prison official is liable only if the "official knows of and disregards an excessive risk to inmate health and safety." Id.   Under the second prong, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842. Whether an official has the requisite knowledge and ignored the substantial risk to plaintiff is a question of fact. Id.   "Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence." DeSpain, 264 F.3d at 975.   Though it is not enough to establish that an official should have known of the risk of harm, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842.

Here, the risk of substantial harm to plaintiff was not obvious.  As noted above, several inmates, even those who were not in the recreation yard, were exposed to cold temperatures.  There is no reason to infer, and there is no evidence to suggest, that any of the defendants knew that plaintiff would suffer as a result of his exposure because he was in the recreation yard.  Further, plaintiff does not deny that the guards, at least occasionally, permitted plaintiff and the other inmates access to bathrooms.  In his grievance, he wrote, "[w]e were left to the guards discretion to come and allow us access to bathrooms at their leisure."  Dkt. # 23-2, at 23.  He later argued, "[b]odily functions that don't revolve around guard's schedules were still adhered to."  Id. at 25.  He continued, "'the body' is exposed to the elements and without bathrooms available not when a guard 'thinks its warranted' but when the body's function requires not when a guard 'has time' to allow."

Id.  The fact that plaintiff admits that the guards permitted bathroom breaks on a schedule, albeit a schedule that did not conform to plaintiff's alleged needs, illustrates that the guards did not contentiously deprive plaintiff of bathroom access or attempt to create an environment where plaintiff would be exposed to human waste.

Plaintiff's allegations that the officers laughed at the prisoners in the recreation yard and taunted them, Dkt. # 25, at 2, does not create a genuine issue of material fact with respect to the subjective prong.  While such conduct, if it occurred, is certainly undesirable, it does not provide evidence that the officers knew that there was an excessive risk to plaintiff's health or safety.  Cf. McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("acts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment").

The Court finds that the summary judgment record is completely devoid of any evidence – direct or circumstantial –  to support defendants' knowledge that the guards were placing plaintiff in risk of substantial harm.  Given that there is no genuine issue of material fact with respect to either the first or second prongs, the Court finds that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim.

## C.

In addition to his Eighth Amendment claim, plaintiff also claims that defendants violated his due process rights.  The Fourteenth Amendment prohibits states from depriving citizens of liberty without due process of law.  That guarantee applies to prisoners as well; however, their due process rights are defined more narrowly.  Wilson v. Jones, 430 F.3d 1113, 1117 (10th Cir. 2005).  In Sandin v. Conner, 515 U.S. 472, 484 (1995), the Supreme Court held that a prisoner is entitled to due

process before he is subjected to conditions that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or disciplinary actions that "inevitably affect the duration of his sentence." Only if there is a liberty interest must officials afford a prisoner due process in the form of: (a) advance written notice of the charges; (b) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (c) a written statement by the factfinder of the evidence relief upon and the reasons for the disciplinary action. Superintendent, Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 454 (1985); Jones, 430 F.3d at 1117.

Here, plaintiff does not deny that he was afforded a hearing and other due process with respect to his alleged misconduct on February 3, 2006. As noted in Section I, above, the incident was reported immediately, and plaintiff was permitted to appeal the misconduct offense. Plaintiff was afforded a disciplinary hearing, and an investigator reviewed the claim upon written and oral testimony from other inmates. The prison officials specifically filled out a "due process review" form noting that plaintiff had received fair notice and due process.

Despite the timely and adequate procedures with respect to the February 3, 2006 offense, plaintiff contends that he was denied due process because he was transferred to the recreation yard prior to receiving a hearing. He explains, "[i]t does not matter that he [plaintiff] was found guilty at a much later date he was subjected to this harsh punishment before a finding of guilt." Dkt. # 25, at 3. It is undisputed that, after the Friday, February 3, 2006 incident, plaintiff was transferred to the recreation yard. He was not reassigned to another unit (the "Agri-Services" unit) until the next job meeting on Thursday, February 9, 2006. Between Monday, February 6, 2006 and Friday, February 10, 2006, plaintiff was assigned to the recreation yard pursuant to the inter-office

memorandum dated July 14, 2005. According to plaintiff, the immediate assignment to the recreation yard without a hearing violated his liberty interests.

Pursuant to <u>Sandin</u>, plaintiff was entitled to the due process protections set forth in <u>Hill</u> only if the transfer to the recreation yard imposed an "atypical and significant hardship" on plaintiff.[3] The transfer to the recreation yard, even if it exposed plaintiff to harsher conditions than he had been exposed to as a member of the yard crew, "does not present a dramatic departure from the basic conditions" of plaintiff's sentence. <u>Sandin</u>, 515 U.S. at 485. Indeed, the Supreme Court and the Tenth Circuit have held that even greater disruptions to inmates' prison conditions did not implicate liberty interests. <u>See, e.g., id.</u> (finding that the state's action in placing plaintiff disciplinary segregation for thirty days did not work a major disruption in his environment as compared to conditions outside disciplinary segregation); <u>Penrod</u>, 94 F.3d at 1406-07 (holding that inmate's placement in administrative segregation unit for prisoners who did not have jobs or participate in other programs did not violate due process). Here, as in <u>Penrod</u>, plaintiff's assignment to the recreation yard was due to his own conduct. <u>Penrod</u>, 94 F.3d at 1406. Assignment to the recreation yard was the result of legitimate prison management concerns that inmates who "get fired from their job[s] or refuse[] to work" should not be permitted to rest in their cells while other inmates work. Dkt. # 23-2, at 28. Further, plaintiff did not have a liberty interest in his prison job with the yard crew; thus, his reassignment did not implicate any constitutionally protected liberty interest. <u>See</u> <u>Penrod</u>, 94 F.3d at 1407 (a prisoner does not have a protected liberty interest in his prison job). Ultimately, placement in the recreation yard was not a significant hardship in relation to the ordinary incidents of prison, and plaintiff was not entitled to a hearing prior to his reassignment. There is no

---

[3]      There is no question that the transfer itself did not affect the duration of plaintiff's sentence.

genuine issue of material fact with respect to plaintiff's due process claim, and defendants' are entitled to summary judgment on this claim.

### IV.

In summary, the Court finds that plaintiff's equal protection claim should be dismissed without prejudice for failure to exhaust his administrative remedies.  The Court further finds that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim because there are no genuine issues of material fact with respect to either the objective or subjective prongs of the Farmer test.  Defendants are also entitled to summary judgment on plaintiff's due process claim because plaintiff's reassignment to the recreation yard did not pose an atypical and significant hardship on him in relation to the ordinary incidents of prison.

Because the Court dismisses without prejudice plaintiff's equal protection claim and finds that defendants' are entitled to summary judgment on plaintiff's Eighth Amendment and due process claims, the Court does not address the defendants' arguments that: (1) plaintiff's claims of alleged constitutional violations against defendant must fail due to lack of personal participation; (2) defendants are entitled to qualified immunity from suit; (3) defendants are immune from suit for damages in their official capacities under the Eleventh Amendment; and (4) plaintiff has failed to show that he is entitled to the declaratory or injunctive relief he seeks. Further, the Court finds that plaintiff's motion for a temporary restraining order and/or permanent injunction is moot.

**IT IS THEREFORE ORDERED** that the Motion to Dismiss/Motion for Summary Judgment and Brief in Support (Dkt. # 24) is **granted in part and denied in part**.  It is **denied** with respect to defendants' motion to dismiss.  However, the Court sua sponte **dismisses without prejudice** plaintiff's equal protection claim for failure to exhaust administrative remedies.

Defendants' motion is **granted** insofar as the Court finds that defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim and his due process claim.  Plaintiff's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (Dkt. ##17, 27) is **moot**. This is a final order terminating this action.  A separate judgment is entered herewith.

    **DATED** this 6th day of March, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT